UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DENNIS WAYNE WILDER, | CASE NO. 1:17CV2609 |
| Plaintiff, | |
| v. | UNITED STATES MAGISTRATE JUDGE GEORGE J. LIMBERT |
| NANCY A. BERRYHILL[1], ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Plaintiff Dennis Wayne Wilder ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In his brief on the merits, Plaintiff asserts that the administrative law judge ("ALJ") erred by: (1) failing to apply the Step Two *de minimis* standard to his mental impairments and to account for limitations from these impairments in his RFC; and (2) failing to properly analyze the opinion of his treating physician, Dr. Tomsik. ECF Dkt. #15.

For the following reasons, the Court REVERSES the decision of the ALJ and REMANDS this case for re-evaluation and analysis of the opinion of Plaintiff's treating physician, Dr. Tomsik.

## I. FACTUAL AND PROCEDURAL HISTORY

On June 12, 2013, an ALJ issued a decision in a prior claim filed by Plaintiff for DIB. ECF Dkt. #12 ("Tr.")[2] at 99-107. The prior ALJ found that Plaintiff had not engaged in substantial gainful activity since February 28, 2011, his prior alleged onset date, and he had the severe impairments of degenerative disc disease ("DDD") and degenerative joint disease ("DJD"). *Id*. at

---

[1]On January 20, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

101. She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, ("Listing of Impairments"). The prior ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform light work, with the abilities to: lift up to 30 pounds occasionally and up to 20 pounds frequently; stand/walk up to 4 hours of an 8-hour workday; sit for 6 hours of an 8-hour workday; to alternate sitting and standing every 30-45 minutes; occasionally stooping, kneeling, crouching and crawling; unlimited pushing and pulling except for lifting and/or carrying; occasionally climbing ramps and stairs; never climbing ladders, ropes or scaffolds; and frequently stooping. *Id.* at 102. Based upon the RFC and the testimony of the vocational expert ("VE"), the prior ALJ determined that Plaintiff could perform his past relevant work as a cashier II. *Id.* at 106. She therefore held that Plaintiff had not been under a disability for Social Security purposes, from February 28, 2011 through the date of her decision, which was June 12, 2013. *Id.* at 107-108.

On September 24, 2014 and July 19, 2016 respectively, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning March 1, 2011 due to lower back, left knee and right knee pain. Tr. at 212-213, 227-232, 242-244, 273. The Social Security Administration ("SSA") denied his applications initially and upon reconsideration. *Id.* at 150-151, 159-161. Plaintiff requested a hearing before an ALJ, which was held on August 18, 2016. *Id.* at 47, 167. Plaintiff testified at the hearing with counsel present, and a vocational expert ("VE") testified as well. *Id.* at 47. Plaintiff sought to amend his onset date.

On December 13, 2016, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. Tr. at 22-41. Plaintiff filed a request for review of the ALJ's decision before the Appeals Council, but it denied Plaintiff's request on February 13, 2017. *Id.* at 1-15. On December 15, 2017, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. He filed a brief on the merits on March 22, 2018 and Defendant filed her merits brief on April 23, 2018. ECF Dkt. #s 15, 16. On August 17, 2018, Defendant filed a Notice of Additional Authority. ECF Dkt. #17.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

In his December 13, 2016 decision, the ALJ referred to Plaintiff's prior application filings and explained that he was required to apply the principles of *Drummind V. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) and *Dennard v. Commissioner of Health and Human Services,* 907 F.2d 598 (6th Cir. 1990). Tr. at 22. The ALJ noted that these cases held that absent evidence of an improvement or deterioration in a claimant's condition, the subsequent ALJ in a case is bound by the findings of the previous ALJ. *Id.* The ALJ cited to Plaintiff's prior claims and indicated that they resulted in a denial of benefits that was affirmed by the previous ALJ. *Id*.

The current ALJ then indicated that the prior ALJ found that Plaintiff had the severe impairments of DDD and DJD and found that Plaintiff had the RFC to perform light work with: occasional lifting of 30 pounds and frequent lifting of 20 pounds; standing/walking up to 4 hours of an 8-hour day; sitting for up to 6 hours of an 8-hour day; alternating sitting and standing every 30-45 minutes; occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; never climbing ladders, ropes or scaffolds; frequently stooping; and unlimited pushing and pulling other than that determined for lifting and carrying. Tr. at 22-23. The current ALJ found that no new or material evidence justified a new finding regarding Plaintiff's severe impairments or his RFC. *Id*. at 23. The current ALJ explained that he had therefore adopted the prior ALJ's severe impairment findings and her RFC for Plaintiff. *Id.* The current ALJ indicated that significant new and material evidence did justify a new finding as to the prior ALJ's finding that Plaintiff could perform his past relevant work as a cashier II. *Id.*

Accordingly, the current ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2011, the alleged onset date, and he had the severe impairments of DDD and DJD. Tr. at 25. He found that Plaintiff's other impairments of obesity, hypertension, hyperlipidemia, gastroesophageal reflux disease, right shoulder rotator cuff tendinitis, marijuana use, and history of asthma and chronic bronchitis were not severe impairments. *Id*. at 26.

The ALJ further found that Plaintiff's affective disorders were not a severe impairment because they, singly and in combination, did not cause more than minimal limitations in his ability

-3-

to perform basic mental work activities. Tr. at 27. He reviewed the medical evidence in the record and used the special technique in effect at the time[3] for determining whether Plaintiff's mental impairments were severe. *Id.*

The ALJ went on to determine that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1. Tr. at 28-30. After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: occasionally lift 30 pounds and frequently lift 20 pounds; sit for 6 hours of an 8-hour day; stand/walk for 4 hours of an 8-hour day; needs a sit/stand option, which allows him to alternate between sitting and standing every 30-45 minutes; he can constantly push, pull and operate foot controls; he can occasionally climb ramps and stairs, but he can never climb ladders, ropes or scaffolds; he can occasionally balance, kneel, crouch and crawl; he can frequently stoop; and he had to avoid all exposure to hazards and heights. *Id.* at 30.

Based upon Plaintiff's age, education, background, the ALJ's RFC, and the VE's testimony, the ALJ determined that Plaintiff could not perform his past relevant work, but he could perform jobs existing in significant numbers in the national economy, such as the jobs of office helper, mail clerk, and information clerk. Tr. at 39-40. In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, and he was not entitled to DIB or SSI from March 1, 2011, through the date of hir decision. *Id.* at 10-41.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

---

[3] As Defendant points out, the Commissioner revised the four broad functional areas that are considered in 20 C.F.R. § 404.1520a, effective January 17, 2017, which was after the ALJ's decision in this case. ECF Dkt. #18 at 10, n. 4, citing Revised Criteria for Evaluating Mental Disorders, 81 FR 66137, available at https://www federalregister.gov/documents/2016/09/26/2016-22908/revised-medical-criteria-for-evaluating-mental-disorders (published 9/26/16).

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ

could have found Plaintiff disabled. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

**V.      LAW AND ANALYSIS**

**A.      MENTAL IMPAIRMENTS**

Plaintiff first asserts that the ALJ erred by failing to find that his mental impairments were severe impairments at Step Two of the sequential evaluation process. ECF Dkt. #15 at 13-19.

At step two of the sequential steps for evaluating entitlement to social security benefits, a claimant must show that he or she suffers from a severe medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not considered severe when it "does not significantly limit [one's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1521(a). At step two, the term "significantly" is liberally construed in favor of the claimant. The regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. §404.1520a(d). The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out "totally groundless claims." *Farris v. Sec'y of HHS*, 773 F.2d 85, 89 (6th Cir.1985). The Sixth Circuit has construed the step two severity regulation as a "*de minimis* hurdle*"* in the disability determination process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988). Under a Social Security policy ruling, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ is required to treat it as "severe." SSR 96-3p (July 2, 1996).

Once the ALJ determines that a claimant suffers a severe impairment at step two, the analysis proceeds to step three; any failure to identify other impairments, or combinations of impairments, as severe in step two is harmless error. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240,

244 (6th Cir.1987). Once a claimant clears Step Two of the sequential analysis, the ALJ is required to consider all of his or her impairments, severe and non-severe, at every subsequent step of the sequential evaluation process. *See Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008)(ALJ's failure to identify an impairment as severe was "legally irrelevant" because the ALJ found other impairments to be severe at Step Two, which allowed the ALJ to consider all impairments in the later steps in the process).

In this case, Plaintiff asserts that the ALJ erroneously found that his mental impairments were not severe impairments at Step Two because they did not cause more than minimal limitations that would impact his ability to perform work. ECF Dkt. #15 at 13-14. Plaintiff also contends that the ALJ's Step Two finding that his DDD and DJD were severe impairments did not render his failure to identify Plaintiff's mental impairments as severe impairments legally insignificant. ECF Dkt. #15 at 15, citing *Doriot v. Comm'r of Soc. Sec.*, No. 3:11CV1648, 2012 U.S.Dist. LEXIS 122632 (N.D. Ohio Aug. 8, 2011), citing *Maziarz,* 837 F.2d at 244 and *Anthony*, 266 Fed. App'x at 457.

Plaintiff is correct that the ALJ found his mental impairments to be non-severe at Step Two. Tr. at 27. The ALJ explained that Plaintiff's affective disorders caused no more than minimal limitations on his ability to perform basic mental work activities. *Id*. The ALJ noted that Plaintiff complained to his doctors and counselor of a depressed mood which was exacerbated by circumstances and certain dates, such as his mother's birthday. *Id*. He cited to mild findings by doctors upon clinical examinations and he noted that Plaintiff was found to be pleasant and cooperative during most of the examinations. *Id*. The ALJ also referred to Plaintiff's reports that the medications that he was taking were generally effective. *Id.* The ALJ also considered the "paragraph B" criteria in the regulations and in Listing 12.00C for evaluating mental disorders. *Id.* He determined that Plaintiff's affective disorders caused only mild limitations on his daily living activities, no difficulties in social functioning, no difficulties in concentration, persistence or pace, and caused no episodes of decompensation. *Id*.

The Court questions the ALJ's Step Two finding that Plaintiff's mental impairment did not cause more than minimal limitations, especially in light of the Step Two *de minimus* hurdle.

However, the ALJ did find Plaintiff's other impairments of DDD and DJD to be severe, which renders his failure to identify Plaintiff's mental impairments as severe impairments legally insignificant if the ALJ considered Plaintiff's mental impairments in his RFC for Plaintiff. The Court finds that the ALJ did consider Plaintiff's mental impairments in his RFC for Plaintiff, although he determined that no limitations were necessary based upon his review of the evidence. Accordingly, the Court finds that ALJ's failure to find Plaintiff's mental impairments to be severe at Step Two was legally irrelevant because he considered the limitations from those impairments in further steps of the evaluation.

In his Step Four analysis, the ALJ reviewed the opinions of record. He noted that Plaintiff's treating psychiatrist, Dr. Svala, completed two mental status questionnaires. Tr. at 37. In the first form dated January 6, 2015, Dr. Svala indicated her diagnosis of Plaintiff with depression and she opined that Plaintiff had: average ability to remember, understand and follow directions; no sign of impairment in maintaining attention; and mild limitation in concentration, persistence and pace. *Id*. at 605. In answering the form's question as to whether Plaintiff had any deficiency in social interaction, she wrote: "increased irritability, low frustration tolerance," and when asked about adaptation, she wrote: "slightly impaired." Tr. at 605. When the form asked how Plaintiff "would react to the pressures, in work settings or elsewhere, involved in simple and routine, or repetitive tasks," Dr. Svala answered "some difficulty interacting with others because of irritability and lability in mood.*" Id.* In the second mental status questionnaire form dated May 5, 2015, Dr. Svala indicated a diagnosis of major depressive disorder, rule out bipolar disorder type I, and generalized anxiety disorder. *Id.* at 706. She indicated that Plaintiff had average abilities to remember, understand and follow directions, to maintain attention, and to sustain concentration, persistence and pace. *Id*. Where the form asked her to describe any deficiencies in Plaintiff's social interaction and adaptation and how he would react to work-setting pressures or pressures elsewhere with simple and routine or repetitive tasks, Dr. Svala wrote, "some mild impairment because of increased anxiety and irritability." *Id.*

Also at Step Four, the ALJ referred to the December 2014 opinion of Dr. Wax, the agency examining psychologist, who interviewed and examined Plaintiff and diagnosed him with bipolar

disorder. Tr. at 37, citing Tr. at 596-601. Dr. Wax indicated in his report that Plaintiff would have difficulty responding appropriately to supervisors and co-workers in a work setting because he gets angry quickly and in fact "blew up" at him during the examination. *Id*. at 601. Dr. Wax opined that Plaintiff would have difficulty responding appropriately to supervisors and co-workers in a work setting, and opined that Plaintiff "would not respond appropriately to work pressures in a work setting" due to his bipolar disorder because "he is volatile, and blows up quickly." *Id.*

In addition to reviewing the opinions of Dr. Svala and Wax, the ALJ also considered the opinions of the agency reviewing psychological consultants, Drs. Zeune and Finnerty. Tr. at 36. Both of these consultants found that Plaintiff's affective disorders were in fact severe impairments that caused moderate limitations in his daily living activities, social functioning and concentration, persistence and pace. Tr. at 120-121, 137-138. Dr. Zeune found that Plaintiff could perform simple and some multi-step tasks in a non-public setting with minimal social interactions and infrequent changes. *Id.* at 126. Dr. Finnerty found that Plaintiff could perform work in a relatively static work setting where changes were infrequent and he could engage in brief and superficial interactions with a small number of others. *Id*. at 143.

The ALJ also considered the opinion of Nurse Practitioner ("NP") Backman, who completed a medical source statement in June of 2016. Tr. at 36, citing Tr. at 1304-1305. She opined that Plaintiff had unlimited or very good abilities in nearly every work-related ability, but indicated that Plaintiff had limited but satisfactory abilities to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, work with or near others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms, interact appropriately with the general public, and respond appropriately to changes in the work setting. *Id*. NP Backman further opined that Plaintiff could not meet competitive standards in the area of performing at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 1304. She further opined that Plaintiff would be absent from work two days per month due to his depression and his impairments would cause him to be off-task about 1 hour per 8-hour workday. *Id*. at 1305.

-9-

In reviewing all of the psychological opinions in the record at Step Four, the ALJ first acknowledged Dr. Svala as Plaintiff's treating psychiatrist and attributed her opinions "great weight." Tr. at 37. He afforded Dr. Wax's opinion only partial weight, explaining that the opined deficits by Dr. Wax concerning Plaintiff's abilities to respond appropriately to supervisors and coworkers were "inconsistent with the general pattern of evidence contained in the hearing level record." *Id.* The ALJ afforded little weight to the opinions of Drs. Zeune and Finnerty, finding that they were not consistent with the general pattern of evidence contained in the hearing level record. *Id.* at 36. Finally, the ALJ considered NP Backman's opinion, afforded it little weight because it was inconsistent with the general pattern of evidence contained in the record. *Id.* He noted that he had afforded more weight to the opinion of Dr. Svala as Plaintiff's treating psychiatrist. *Id.* The ALJ also reviewed Plaintiff's Global Assessment of Functioning ("GAF") scores in his decision, noting that they were medical opinions that must be considered with the rest of the evidence, but they were of limited use because they represented a clinician's judgment about the severity of a claimant's mental impairment at a particular moment in time. *Id.* at 38.

The Court notes that the ALJ did not explain why he afforded less than controlling weight to the opinions of Dr. Svala, Plaintiff's treating psychiatrist. He appears to have bypassed the treating physician rule analysis and afforded her opinions only great weight. An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons"[4] for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his or her case is determined, especially when he knows that his treating

---

[4] The Court notes that the SSA has changed the treating physician rule effective March 27, 2017. *See* 20 C.F.R. § 416.920. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

physician has deemed him disabled and he may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

A violation of the good reasons requirement as to the treating physician rule can constitute harmless error in three circumstances: (1) where the treating source's opinion was patently deficient; (2) where the Commissioner made findings consistent with the treating source's opinion; or (3) where the Commissioner otherwise met the goal of 20 C.F.R. § 416.927(c)(2). *Cole*, 661 F.3d at 940.

In the instant case, unlike most treating physician opinions, Dr. Svala's opinions did not suggest a finding of disability or recommend work-related mental limitations for Plaintiff. Further, the ALJ did explain why he attributed "great weight" to the opinions of Dr. Svala and he gave the most weight to her opinions. Tr. at 37. He indicated in his decision that Dr. Svala found that Plaintiff had an average ability to maintain attention and to sustain concentration, persistence and pace. *Id.* at 37. This is correct as Dr. Svala did indeed make such findings. *Id.* at 605-606, 705-706. He further cited to her opinion that Plaintiff had a mild impairment due to increased anxiety and lability. *Id.* at 37. Dr. Svala does opine in her May 2015 statement that Plaintiff had only "some mild impairment" in social interaction, adaptation, and reacting to pressures in work settings due to his increased anxiety and irritability. *Id.* at 706. The Court finds that while the ALJ should have complied with the treating physician rule in considering Dr. Svala's opinions, his failure to do so constitutes harmless error as the ALJ complied with the goals of the treating physician rule by attributing the most weight to Dr. Svala's opinions, explaining why he attributed the most weight to her opinions, and Dr. Svala's opinions did not present a situation where technical compliance with the treating physician rule would benefit Plaintiff or result in any difference in the ALJ's Step Four findings.

### B.  DR. TOMSIK'S OPINION AS TO PHYSICAL IMPAIRMENTS

Plaintiff also complains that the ALJ violated the treating physician rule by rejecting the opinions of Dr. Tomsik, Plaintiff's treating physician, and by failing to provide good reasons for doing so. ECF Dkt. #15 at 19-25. The Court agrees and remands the instant case for reevaluation and analysis of Dr. Tomsik's opinion in compliance with the treating physician rule.

Dr. Tomsik completed a physical RFC questionnaire for Plaintiff on August 21, 2014. Tr. at 234-238. He indicated that he first evaluated Plaintiff on September 23, 2013 and his diagnoses included DJD of the left knee, Grade 3 chondral changes in the left knee, and medial meniscus tear. *Id.* at 234. He described Plaintiff's symptoms as daily pain in the left knee, instability and swelling, gait disturbances and depressed mood. Id. He indicated that Plaintiff had worsening pain with walking and standing and while Plaintiff had initial improvement after arthroscopic surgery, he had a reinjury and his pain was progressively worse. Id. As to the clinical findings and objective

signs, Dr. Tomsik noted a 2013 MRI showing a medial meniscus tear, a December 13, 2013 arthroscopy showing a complex tear of the posterior horn and body of the medial meniscus and Grade 3 chrondral changes of the femoral condyle. *Id*. As to treatment, Dr. Tomsik listed an arthrscopy, medial menisectomy and chondroplasty, corticosteroid injections, physical therapy, Tramadol, using a cane and having a brace. *Id*.

Dr. Tomsik went on to opine that Plaintiff's impairments would last or be expected to last for at least 12 months, emotional factors such as depression contribute to the severity of his symptoms, and Plaintiff's symptoms and limitations were consistent with his impairments. Tr. at 235. He further opined that Plaintiff would frequently experience pain and other symptoms severe enough to interfere with his attention and concentration during a workday. *Id*. Dr. Tomsik further stated that Plaintiff could walk less than one city block without experiencing severe pain or without rest, Plaintiff could sit for 20-30 minutes at one time, he could stand for 15-20 minutes at one time, he could stand/walk up to 2 hours per 8-hour workday, and he could sit for up to 4 hours per 8-hour workday. *Id.* at 235-236. He stated that Plaintiff needed to walk around every 20-30 minutes for five minutes at a time during an 8-hour day, and he was capable of low stress jobs. *Id*. Dr. Tomsik further opined that Plaintiff needed a job that permitted shifting positions from sitting, standing, or walking at will 3-4 times per 8-hour workday, and he needed to rest for 10-15 minutes before returning to work. *Id.* at 236. He also indicated that Plaintiff needed to use a cane while walking/standing, he could occasionally lift less than 10 pounds, he could rarely lift up to 10 pounds, and he could never lift up to 20 or more pounds because he used a cane and instability and falling would be concerns. *Id*. Dr. Tomsik opined that Plaintiff could occasionally twist, rarely stoop or climb stairs, and never crouch/squat, or climb ladders. *Id*. at 237. Finally, Dr. Tomsik opined that Plaintiff's impairments would likely produce good and bad days and he would miss work about 4 days per month due to his impairments or treatment for his impairments. *Id*.

In addressing Dr. Tomsik's opinion, the ALJ noted that he was a treating physician. Tr. at 36. However, he afforded Dr. Tomsik's opinion only little weight, finding that it "was inconsistent with the general pattern of evidence contained in the hearing level record. " *Id*. The ALJ explained that he accommodated Dr. Tomsik's sitting and standing/walking restrictions by restricting Plaintiff

-13-

to 6 hours per day of sitting and 4 hours per day of standing/walking in an 8-hour workday, even though Dr. Tomsik had opined a restriction of sitting to about 4 hours and standing/walking to less than 2 hours per 8-hour workday. *Id.* The ALJ further indicated that he accommodated Dr.Tomsik's sit/stand at will restriction by allowing Plaintiff to alternate between sitting and standing every 30-45 minutes. *Id.*

The Court finds that the ALJ violated the treating physician rule with regard to Dr. Tomsik's opinion. The part of his decision in which he discusses Dr. Tomsik's opinion says nothing about affording controlling weight to the opinion and it lacks sufficient good reasons for attributing it less than controlling weight beyond a vague statement about inconsistency with the record. Further, unlike Dr. Svala's opinions concerning Plaintiff's mental impairments and limitations, Dr. Tomsik's opinion is very restrictive as to Plaintiff's physical limitations. Thus, a failure to comply with the treating physician rule with regard to Dr. Tomsik's opinion is not harmless error.

However, the Court can also look to the rest of the ALJ's decision in order to determine whether he complied with the treating physician rule. In the remaining parts of his decision, the ALJ found that despite Dr. Tomsik's opinion, the record showed only mild to moderate laboratory and clinical findings that were consistent with the prior ALJ's RFC. Tr. at 38. He cited to the opinion of Dr. Farrow, a treating physician who performed the left knee partial medial meniscectomy and medial compartment chondroplasty. *Id.* at 38, citing Tr. at 326. The ALJ noted that on January 9, 2014, Dr. Farrow limited Plaintiff to sedentary work, which included no running, cutting, jumping, pivoting, or suddenly changing direction, no loaded squatting, no climbing, limited stair and hill climbing, no kneeling, sitting for extended periods of time, taking breaks from sitting to walk or stretch, elevating his leg, and not lifting any heavy objects. *Id.* at 326. The ALJ also gave the opinion of Dr. Farrow limited weight, finding that it also was "not generally consistent with the pattern of evidence contained in the hearing level record." *Id.* at 37. The ALJ concluded that the restrictions were made after Plaintiff's surgery and no evidence existed that the restrictions were meant to be long-term limitations. *Id.*

The Court finds that the ALJ's treatment of Dr. Farrow's opinion is also insufficient because he fails to explain the pattern of evidence that contradicts this opinion and he does not cite to the

-14-

records that he contends supports this finding. The ALJ's statement that Dr. Farrow's restrictions were not meant to be long-term limitations very well may be true, but there is no evidence as to just how long these restrictions were to last. It appears that Plaintiff continued to have pain and difficulties with his left knee following the surgery, so much so that Dr. Farrow indicated on May 8, 2014 that Plaintiff may need total knee replacement surgery for his complex tear of the posterior horn medial meniscus. *Id*. at 340. In fact, on April 2, 2015, Dr. Molloy performed a total left knee replacement. *Id*. at 687-692. Plaintiff also consistently complained of right knee pain and Dr. Molloy performed a total right knee replacement surgery on October 27, 2015. *Id*. at 869-872. Thus, it appears that at least for some period of time, Dr. Tomsik's restrictions were consistent with the opinions of other treating physicians, including Dr. Farrow. This therefore conflicts with the ALJ's treatment of the opinions of both Dr. Tomsik and Dr. Farrow. The duration of these restrictions needs to be clarified in order to determine whether they meet the requirements for social security benefits and Dr. Tomsik's restrictions.

The Court makes no finding on disability or whether Plaintiff qualifies for social security benefits. The Court does find that the ALJ violated the treating physician rule by failing to provide good reasons for attributing less than controlling weight to the opinion of Dr. Tomsik.

## **VI. CONCLUSION AND RECOMMENDATION**

For the above reasons, the Court REVERSES the decision of the ALJ and REMANDS this case for re-evaluation and analysis of Dr. Tomsik's opinion.

Date: March 29, 2019          */s/George J. Limbert*
                                                     GEORGE J. LIMBERT
                                                     UNITED STATES MAGISTRATE JUDGE